UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK M.,[1]

|  |  |  |
|---|---|---|
| | Plaintiff | DECISION and ORDER |
| -vs- | | 6:23-CV-6681-CJS |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| | Defendant. | |

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits.   Plaintiff maintains that such determination is affected by errors of law and not supported by substantial evidence.   Now before the Court are Plaintiff's motion for judgment on the pleadings (ECF No. 8), and Defendant's cross-motion for the same relief (ECF No. 10).   For reasons discussed below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded to the Commissioner for further administrative proceedings.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

---

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error

---

employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability

determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying the substantial-evidence standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on *post hoc* rationalizations offered by the Commissioner, but may rely on evidence that was evidently considered by the ALJ even

if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ...."); *Banyai v. Berryhill*, 767 F. App'x at 177 ("An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, and, consequently, the Court will refer to the record only as necessary to rule on the pending motions.

Briefly, Plaintiff applied for SSDI benefits, claiming that he became disabled on December 31, 2015, due to impairments including knee pain, hand tremors, anxiety, and agoraphobia.   Plaintiff's claim was denied initially and on reconsideration.   As to the reconsideration decision, State agency physician M. Kirsch, M.D., found that the record contained insufficient evidence to evaluate Plaintiff's alleged physical impairments, while State agency psychologist M. Juriga, Ph.D. ("Juriga"), found that Plaintiff's mental impairments were not disabling, since Plaintiff "retain[ed] the ability to perform the basic mental demands of unskilled work[.]" Tr. 98.   More particularly, Juriga stated: "The clmt retains the sustained capacity to meet the basic mental demands of competitive, remunerative, unskilled work including the ability to: understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and unusual work situations; and deal with changes in a routine work setting." Tr. 98.   Juriga rendered this opinion on February 1, 2022, more than a year after the last-insured date, December 31, 2020, with the benefit of having reviewed the entire medical record. *Id*.

The only other medical opinion of record was from Plaintiff's treating mental-health therapist, Hilda Kay Loree-Pryor, LCSW-R, CASAC ("Loree-Pryor"), who began treating Plaintiff on June 5, 2019. Tr. 730-732.   Loree-Pryor indicated that Plaintiff's mental health diagnoses included major depression, recurrent, moderate; alcohol abuse, mild;

agoraphobia; and panic disorder. Tr. 730.  When asked to rate Plaintiff's abilities to perform the mental requirements of work, Loree-Pryor stated that Plaintiff was "unable to meet competitive standards" with regard to remembering work procedures, carrying out short and simple instructions, maintaining attention, maintaining regular attendance, sustaining an ordinary routine, and requesting assistance.  She further indicated that Plaintiff had "no useful ability to function" with regard to working in proximity to others, making simple work-related decisions, completing a normal workday and workweek without interruptions from mental health symptoms, performing at a consistent pace, accepting instructions and responding appropriately to criticism, getting along with others, responding to changes in a routine, dealing with stress, carrying out detailed instructions, and dealing with the stress or semiskilled and skilled work. Tr. 731.  Additionally, Loree-Pryor stated that Plaintiff would have a "marked" limitation in understanding, remembering and applying information, and "extreme" limitations in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing himself. Tr. 732. Finally, Loree-Pryor opined that Plaintiff's impairments would cause him to be absent from work more than four days per month. Tr. 732.  Loree-Pryor drafted this opinion on September 28, 2022, almost two years after the last-insured date. Tr. 732.

Following a hearing, at which Plaintiff and a VE testified, the ALJ issued a decision finding, upon application of the five-step sequential evaluation, that Plaintiff was not disabled at any time between the alleged onset date and Plaintiff's last-insured date. The ALJ found, in pertinent part, that Plaintiff had severe impairments consisting of "substance abuse (alcohol); depression disorder; anxiety disorder with agoraphobia;

bilateral knee osteoarthritis; status post right knee arthroscopic surgery; and bilateral hand tremor," which prevented him from performing his past relevant work as a certified nursing assistant and hand packager, but which did not prevent him from performing other work, including the jobs of "inspector hand packager," "food service worker," "bench assembler," and "photocopy machine operator." Tr. 17-28.

Prior to reaching that conclusion, at step four of the sequential evaluation the ALJ found that Plaintiff had the following RFC during the relevant period:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he required the ability to wear knee braces, as needed, in the work setting. He could occasionally climb ladders, ropes, or scaffolds. He could less than occasionally crawl. He could not kneel. He could frequently operate foot control bilaterally. He could occasionally fine finger up to five hours per workday. He had no limitations on gross fingering (defined with examples such as picking up suitcases, taking wood off a saw, holding a rowing machine handle, holding a golf club, holding and using a gun, or holding and using a bow and arrow).[6] He could perform simple, routine, and repetitive tasks. He was limited to work in a low stress environment, defined as only occasional decision making and only occasional changes in work setting. He could less than occasionally interact with the public. He could occasionally interact with co-workers. He could occasionally interact with supervisors. He could not perform tandem tasks.

Tr. 20.

In explaining this RFC finding, the ALJ first discussed the treatment notes from Plaintiff's mental-health treatment providers, which, he maintained, showed that Plaintiff retained the RFC set forth above. On this point, the record indicates that between

---

[6] The record indicates that Plaintiff continued to use his rowing machine, golf, hunt, and pursue archery, despite his alleged impairments.

approximately 2013 and mid-2018, Plaintiff treated with psychiatrist Ronald Spurling, M.D. ("Spurling"); that between mid-2018 and 2022, he treated with Kathleen Rose, NP ("Rose"), primarily for medication management; and that between mid-2019 and 2022, he treated with Loree-Pryor for "talk therapy" sessions.

The ALJ stated, for example, that Dr. Spurling's treatment notes showed that Plaintiff had "variable anxiety and depression symptoms, but retain[ed] significant functioning," since, for example, Plaintiff had told Spurling that he was "doing fine," that he was "doing really well and looking for a job," and that he had traveled to Florida with his family to vacation at Disney World. Tr. 23.

The ALJ's decision does not mention Nurse Practitioner Rose by name, although, it refers repeatedly to her treatment notes in Exhibit 11F. *See*, Tr. 15-28 (ALJ decision referring to Exhibit 11F twenty-four separate times).   The ALJ stated that Exhibit 11F was "not consistent with the level of agoraphobia alleged" by Plaintiff, since, for example, it contained references to statements by Plaintiff that he was "doing well," visiting relatives, "going full gallop," planning vacation trips, hosting family gatherings, watching golf tournaments, attending funerals, and playing golf. Tr. 23-24.   The ALJ stated, rather, that Exhibit 11F supported his RFC finding, stating:

> The treatment notes support the consistent report of anxiety, agoraphobia, depression, and panic symptoms. (Exhibit 11F).   However, the claimant's subjective contemporaneous reports also support a level of activity, and report of well-being consistent with significant functioning.   The mental limitations in the residual functional capacity are supported to minimize triggering or exacerbating symptoms.

Tr. 24.

As part of this discussion of the mental-health treatment notes, the ALJ also made references to Loree-Pryor's treatment notes, contained in Exhibits 6F and 15F, by stating:

> In December of 2022, he wanted to go hunting. (Exhibit 6F, p. 76). . . . The claimant reported having anxiety in August of 2022, while going on vacation (Exhibit 15F, p. 78, 81). In August of 2022, the claimant reported to Ms. Loree-Pryor, he was unable to drive, leave his yard, grocery shop by himself or attend any type of social outing (Exhibit 15F, p. 82).

Tr. 23, 25.

The ALJ interpreted the mental-health treatment records as a whole, with their references to Plaintiff's various activities, to be inconsistent with Plaintiff's claim of total disability, but consistent with an RFC finding limiting him to simple, routine, and repetitive work in a low-stress environment with limited interaction with other people: "The overall record provides multiple inconsistencies about the claimant's alleged level of limitation and his level of activity. . . . The claimant's level of activity [described in the treatment records] supports the claimant is not limited beyond the residual functional capacity described above." Tr. 24, 25.

The ALJ then discussed the medical opinion evidence and found that Juriga's opinion was persuasive, while Loree-Pryor's opinion was not,[7] stating:

> In February of 2022, State agency consultant, M. Juriga, PhD opined the claimant had mild limitation understanding, remembering, or applying information; moderate limitation interacting with others; moderate limitation concentrating, persisting, or maintaining pace; and moderate limitation adapting or managing oneself (Exhibit 4A). Dr. Juriga opined the claimant retained the ability to perform the basic mental demands of unskilled work; he retained the sustained capacity to meet the basic mental demands of

---

[7] The ALJ never actually stated that he considered Loree-Pryor's opinion to be unpersuasive, though that apparently was what he found.

competitive, remunerative, unskilled work including the ability to: understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting (Exhibit 4A). This opinion is persuasive. The claimant is able to complete a variety of activities. The mental health treatment notes approaching the date last insured support he was reporting largely stable symptoms with medication (Exhibit 11F).

In September of 2022, Hilda Kay Loree-Pryor, LICSW, CASAC opined the claimant had marked limitations understanding, remembering, or applying information; extreme limitation interacting with others; extreme limitation concentrating, persisting, or maintaining pace; and extreme limitation adapting or managing himself (Exhibit 12F, p. 3). She reported the disorder had lasted more than two years, and the claimant had a minimal capacity to adapt to changes in their environment, or to the demands that are not already a part of daily life (Exhibit 12F, p. 3). She opined the claimant would miss more than four days of work per month (Exhibit 12F, p. 3). The treatment notes prior to the date last insured are not consistent with the level of limitation in this opinion (Exhibit 11F). Furthermore, treatment notes from Dr. Spurling, Dr. Mitchko, and Dr. Hwang show the claimant interacting appropriately with his medical care providers and planned treatment (Exhibits 2F; 3F; 13F). Their treatment notes are not consistent with the claimant having marked and extreme limitations (*Id.*).

Tr. 26.

Plaintiff appealed the ALJ's decision finding him not disabled, but the Appeals Council declined to review the decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

In this action, Plaintiff maintains that the Commissioner's decision must be reversed since it contains errors of law and is unsupported by substantial evidence. As discussed more fully below, Plaintiff contends, first, that with regard to the physical aspect of the RFC finding, the ALJ's determination is erroneous, insofar as it is not based on any

medical opinion of record, and unsupported by substantial evidence.   Plaintiff further contends that the mental aspect of the RFC finding is also erroneous, inasmuch as it resulted from the ALJ's failure to follow 20 C.F.R. § 404.1520c when evaluating the medical opinions, and unsupported by substantial evidence.

Defendant disagrees and contends that the ALJ's decision is free of error under the applicable regulations and supported by substantial evidence.

The Court has considered the parties' submissions and the relevant portions of administrative record.

## DISCUSSION

The ALJ's RFC Finding Concerning Plaintiff's
Physical Limitations

Plaintiff, who claims to be disabled in part due to knee pain and hand tremors,[8] contends that the exertional aspect of the ALJ's RFC finding is inadequately explained and unsupported by substantial evidence, primarily since it is not based on any medical opinion in the record as to his physical limitations, but, instead, is based on the lay opinion of the ALJ, who mischaracterized the evidence.   More specifically, Plaintiff states:

> [T]he record does not contain a medical opinion addressing Plaintiff's physical abilities and limitations.  The physical findings are based solely upon the ALJ's lay interpretation of activities of daily living and the raw data in the treatment notes.  The ALJ mischaracterized Plaintiff's activities to infer greater physical [abilities].  Plaintiff's isolated and sporadic activities performed within his home do not show greater abilities outside of the home on a regular and continuing basis.

---

[8] Tr. 45 (receiving treatment for knee pain and hand tremors).

ECF No. 8-1 at p. 12; *see also, id*. at 28 ("An ALJ who makes an RFC determination in the absence of supporting medical opinion has improperly substituted his own opinion for that of a physician, and thus has committed legal error. . . . Medical records alone cannot provide substantial evidence for an RFC determination; an ALJ's RFC determination must be supported by a medical opinion in the record[.]") (citations and internal quotation marks omitted).

Plaintiff primarily contends that the RFC finding concerning physical impairments is necessarily erroneous, since it is not based on a medical opinion. However, the Second Circuit recently rejected that same argument, stating:

> Rubin argues that the ALJ committed a categorical error by denying her application for benefits without a medical opinion to support that decision. . . . The ALJ's error was not categorical. An ALJ's decision must be supported by substantial evidence – but there is no blanket requirement that such a decision must be supported by a congruous medical opinion for it to meet that evidentiary standard. As discussed, 20 C.F.R. § 404.1520c provides the framework for how the Commissioner considers medical opinions in an administrative record when evaluating disability for claims filed on or after March 27, 2017[,] . . . [but] [n]othing in the regulation indicates that an ALJ's ultimate determination of disability or assessment of RFC must comport with a specific medical opinion.

*Rubin v. Martin O'Malley, Comm'r of Soc. Sec*., 116 F.4th 145, 155 (2d Cir. 2024) (footnotes omitted). Accordingly, insofar as Plaintiff argues that the ALJ categorically erred by making an RFC finding without a medical opinion, the argument lacks merit.

Plaintiff, nevertheless, contends that the physical aspects of the RFC finding are unsupported by substantial evidence since they are based only on the ALJ's interpretation of the evidence, which the ALJ mischaracterized. *See*, Pl. Memo of Law, ECF No. 8-1 at

p. 12 ("The physical findings are based solely upon the ALJ's lay interpretation of activities of daily living and the raw data in the treatment notes. The ALJ mischaracterized Plaintiff's activities to infer greater physical [abilities than he has.]").

However, the Court disagrees. Courts in this Circuit routinely hold that absent a medical opinion, an ALJ may permissibly make a "common sense" RFC finding in certain limited situations, such as where the claimant has only minor physical impairments:

> [I]t is not *per se* error for an ALJ to make the RFC determination absent a medical opinion. *In Tankisi v. Commissioner of Social Security*, the Second Circuit expressly rejected the argument Lewis makes here, that the lack of a medical opinion is a fatal error requiring remand. 521 Fed. Appx. 29, 2013 WL 1296489 (2d Cir. Apr. 2, 2013). The Circuit Court held that remand is not necessary where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." 521 Fed. Appx. At 34. In *Tankisi*, the record was found sufficient where, although the record contained no formal opinion, it did include a physician's assessment of the plaintiff's limitations. *Id*. <u>In other circumstances, especially where the medical evidence shows relatively minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.</u>" *House v. Astrue*, 2013 U.S. Dist. LEXIS 13695, 2013 WL 422058 at *4 (N.D.N.Y. Feb.1, 2013) (internal quotation omitted).

*Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (emphasis added); *see also, Joanne H. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00015 EAW, 2024 WL 322000, at *6 (W.D.N.Y. Jan. 29, 2024) ("It is true that that 'under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]' *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (quotation and citation omitted).");

*Bonita B. v. Comm'r of Soc. Sec.*, No. 20-CV-1894MWP, 2023 WL 2342757, at *3 (W.D.N.Y. Mar. 3, 2023) ("[W]here the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.") (citation and internal quotation marks omitted).

Here, the ALJ found that Plaintiff's physical impairments were well-managed and did not prevent him from performing activities such as golfing, hunting, and using a rowing machine for up to two hours at a time. *See, e.g.*, ALJ's Decision, Tr. 19 ("The claimant has a normal gait throughout most of the evidence, with the exceptions of the weeks immediately following arthroscopic surgery on his right knee. . . . The claimant has bilateral hand tremor which is treated with medication. The tremors do not preclude the claimant from using a computer for multiple hours per day, using a rowing machine for exercise daily, and periodically using a gun, a bow, hunting, and playing golf."); *see also, id.* at 22 ("The claimant periodically seeks care for knee pain, which appears responsive to treatment. He is able to engage in a variety of activities described in the medical evidence, including daily use of a rowing machine for up to two hours at a time."); *id.* at 24 ("In November 2019, Amanda Dendis, NP, neurology specialist, reported the claimant's hand tremor was well controlled with 20 mg of propranolol twice daily. He continued with this medication in April 2021 and reported his hand tremor was very well controlled."). Nevertheless, the ALJ limited Plaintiff to less than a full range of light work, to accommodate those impairments. *See*, Tr. 22 ("[T]he claimant responds to treatment, and the evidence supports he engages in a variety of activities, supporting no more than

the limitations described in the [RFC finding].").

The Court finds that even without a medical opinion, the physical aspect of the ALJ's RFC finding is supported by substantial evidence.   That is, the ALJ was properly able to make a commonsense finding under the circumstances, considering the relatively minor nature Plaintiff's physical impairments, and Plaintiff's admitted ability to pursue activities such as utilizing exercise machines, golfing, hunting, and archery.[9]   Indeed, the ALJ's finding on this point, limiting Plaintiff to less than a full range of light work, was generous considering the dearth of evidence that Plaintiff experienced any significant functional limitations from his physical ailments.   Treatment notes indicate, for example, that Plaintiff regularly used a stationary bike and rowing machine to exercise, and, indeed, that his mental health therapist was concerned he might be exercising too much. *See, e.g.*, Tr. 907 ("OCD tendency to over exercise is discussed.   Pt is encouraged to give his body 1 day of rest from rowing for an hr daily.   Pt states, "I rowed for over 2 hrs yesterday."   Other activities are encouraged.   Pt likes to golf.").[10]   Additionally, Plaintiff testified that he regularly used a bench press machine and performed Karate "kata" drills. Tr. 49, 53.   Contrasted with this, and contrary to what Plaintiff baldly asserts, the Court sees no indication that the ALJ ignored or mischaracterized evidence indicating that Plaintiff had greater physical limitations than what the ALJ found.[11] Consequently, the

---

[9]  On this point, the Court disagrees with Plaintiff's assertion that, "This is not a situation where the limitations were so minimal [that] the ALJ could make a commonsense assessment relating to Plaintiff's functioning given that Plaintiff suffered from arthritis in the bilateral knees with a history of surgery and injections in both knees." Pl. Memo of Law, ECF No. 8-1 at p. 29.

[10]  Contrary to this, at the hearing Plaintiff testified that he only used the rowing machine for fifteen minutes each day. Tr. 42.

[11]  Plaintiff asserts that "the ALJ could [not] make a commonsense assessment relating to Plaintiff's functioning *given that Plaintiff suffered from arthritis in the bilateral knees with a history of surgery and*

portion of Plaintiff's motion challenging the RFC findings involving physical limitations is denied.

<u>The ALJ's Finding Concerning Plaintiff's</u>
<u>Mental Impairments</u>

Plaintiff also maintains that the ALJ's mental RFC findings are erroneous and unsupported by substantial evidence, since the ALJ failed to properly evaluate the medical evidence, especially the opinion of therapist Loree-Pryor, who treated Plaintiff during the eighteen months prior to the last-insured date. More specifically, Plaintiff contends that the ALJ's decision misidentifies and mischaracterizes Loree-Pryor's treatment notes, inaccurately summarizes the medical evidence, and fails to mention a large amount of evidence that is consistent with Loree-Pryor's opinion and inconsistent with the RFC finding. For example, Plaintiff states:

> [T]he ALJ did not discuss the content of any of the treatment notes of Ms. Loree-Pryor in relation to her opinion and misattributed the treatment notes from [NP Rose] as Ms. Loree-Pryor's treatment notes. Tr. 23 (citing T 713-29). Further, when discussing the treatment notes from [NP Rose and Dr. Spurling], the ALJ improperly cherry-picked isolated findings while ignoring abnormal findings often contained in the same treatment notes.
>
> ***
>
> Exhibit 11F contained records from [NP Rose],[12] and not Ms. Loree-Pryor. The treatment notes of Ms. Loree-Pryor were in Exhibits 6F and 15F. The ALJ's decision only cites to Exhibit 6F in reference to a treatment note from

---

*injections in both knees,*" Pl. Memo of Law, ECF No. 8-1 at p. 29 (emphasis added), but fails to show how such knee arthritis would limit his ability to perform work activities. *See, id.* at pp. 7, 9 (referencing only "moderate" discomfort and "an occasional catching sensation."). The Court also notes that when visiting his primary care physician and eye doctor, Plaintiff routinely reported mental health symptoms while denying *any* musculoskeletal or neurologic symptoms. *See, e.g.*, Tr. 431, 519, 755, 767, 925, 935.

[12] Plaintiff actually referred here to records from "Metamorphis," which the Court understands as referring to "Meadow Morphosis," the medical office where NP Rose was employed. See, https://www.sharecare.com/doctor/kathleen-rose-y9ql4mz ("Kathleen Rose, RN is a Nurse Practitioner in Canandaigua, NY. Kathleen Rose currently practices at Meadow Morphosis.").

December 9, 2020 to find Plaintiff was doing well because [he] wanted to go hunting. . . . At most, the ALJ evaluated one treatment note of Ms. Loree-Pryor from prior to the date last insured, and the ALJ did not discuss the positive findings . . . within the treatment notes of Ms. Loree-Pryor. The ALJ mischaracterized the content of [Loree-Pryor's] treatment notes, and [also] failed to acknowledge the magnitude of support [for Loree-Pryor's opinion] consistently provided in the mental status examinations.

ECF No. 8-1 at pp. 13, 15 (citations omitted); *see also, id*. at 16 ("[R]ecords prior to the date last insured . . . similarly contain abnormal mental status examinations inconsistent with a finding that Plaintiff was doing well."); *id*. at 17 ("The ALJ failed to discuss the mental status examinations from the relevant time frame and compare the findings to the opinion of Ms. Loree-Pryor. This constitutes improper cherry picking[.]"); *id*. at 19 ("[T]he ALJ's summation [of the mental health treatment notes] does not accurately reflect the content of the treatment notes."); *id*. ("[T]he ALJ's summation [of Rose's notes in Exhibit 11F] does not accurately reflect the content of the treatment notes.").

Plaintiff also maintains that the ALJ failed to properly evaluate the supportability and consistency of the opinion by State Agency examiner Juriga, which the ALJ found to be persuasive. *See, id*. at p. 26 ("[G]iven the lack of analysis under the regulatory factors, it is unclear how the findings of Dr. Juriga are supported by and consistent with the record, including the treatment notes and opinion of Ms. Loree-Pryor, treatment notes of Dr. Spurling, and treatment notes from [NP Rose].").

Defendant disagrees and maintains that Plaintiff's arguments amount to an improper request to have the Court re-weigh the evidence.

Concerning these arguments by the parties, the basic legal principles governing

an ALJ's duty to evaluate the persuasiveness of medical opinions are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2).
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2).
>
>                ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). [13] However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2

---

[13] The Second Circuit has indicated that an ALJ should provide some degree of explanation on these points beyond merely indicating, for example, that he or she finds that an opinion is, or is not, well supported or consistent with the record. *See, Loucks v. Kijakazi*, 2022 WL 2189293 at *2 ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record.   . . .   [T]he ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.") (emphasis added).

(N.D.N.Y. Sept. 20, 2022).

Additionally, where an ALJ makes an RFC finding that conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted, and in doing so the ALJ cannot ignore or mischaracterize evidence. *See*, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.") (emphasis added).

> Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements. SSR 96-8p, 1996 WL 374184, at *7; *see Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). "If the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Williams v. Colvin*, No. 13-roncv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (quoting SSR 96-8p); *accord Garcia v. Berryhill*, No. 17-cv-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018). While an "ALJ is not required to explicitly reconcile every conflicting shred of evidence in the record, an ALJ cannot simply selectively choose evidence in the record that supports [his] conclusions." *Williams*, 2015 WL 1223789, at *8 (cleaned up); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

*Lynch v. Commissioner*, No. 22CIV5620CSAEK, 2024 WL 728483, at *11 (S.D.N.Y. Feb. 21, 2024); *see also, Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020) ("The ALJ is obligated to consider "'all of the relevant medical and other evidence.'" *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1545(a)(3)). An ALJ's failure to consider relevant evidence is grounds for remand. *See id*.; *see also*

*Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (concluding that ALJ erred by tending to "overlook or mischaracterize" portions of evidence that supported disability finding)."); *Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).[14]

Applying the foregoing principles in this case, the Court finds that remand is required since the ALJ committed procedural errors when evaluating the mental-health opinion evidence, and "a searching review of the record" does not assure the Court that the substance of the regulation was followed.

To begin with, the ALJ's discussion of the opinions by Juriga and Loree-Pryor did not expressly explain how he considered both the consistency and supportability of each opinion, as required by 20 C.F.R. § 416.920c. Consequently, the ALJ committed procedural error.

Additionally, it is not otherwise clear from the ALJ's decision that he properly considered those factors. For example, with regard to Loree-Pryor's opinion, it appears, as Plaintiff contends, that the ALJ mistakenly believed Exhibit 11F was treatment notes from Loree-Pryor, when it actually was notes by NP Rose, who provided medication

---

[14] *See also, Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (Observing that some impairments, such as depression, may have symptoms that wax and wane, and that, "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.... Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimalizing Dr. Dron's opinion.").

management during roughly the same period that Plaintiff was attending therapy with Loree-Pryor.    In that regard, the ALJ's decision expressly refers to Exhibit 11F as being notes of Loree-Pryor,[15] while never mentioning Rose.    This is significant since the ALJ referred to Exhibit 11F twenty-four times, seemingly far more than any other exhibit. Indeed, it appears that the ALJ discounted both Plaintiff's statements about his mental health symptoms and Loree-Pryor's written opinion, based primarily upon the reports of Plaintiff's activities contained in Exhibit 11F.

Furthermore, the ALJ's decision broadly asserts that "*the treatment notes [from] prior to the date last insured* are not consistent with the level of limitation in [Loree-Pryor's] opinion" written in 2022, but fails to explain how Loree-Pryor's own treatment notes from before the last-insured date, contained in Exhibits 6F and 15F, are actually inconsistent with her opinion.    In this regard, the ALJ states in pertinent part as follows:

> In September of 2022, [Loree-Pryor] opined the claimant had marked limitations understanding, remembering, or applying information; extreme limitation interacting with others; extreme limitation concentrating, persisting, or maintaining pace; and extreme limitation adapting or managing himself (Exhibit 12F, p. 3). She reported the disorder had lasted more than two years, and the claimant had a minimal capacity to adapt to changes in their environment, or to the demands that are not already a part of daily life (Exhibit 12F, p. 3). She opined the claimant would miss more than four days of work per month (Exhibit 12F, p. 3). The treatment notes prior to the date last insured are not consistent with the level of limitation in this opinion (Exhibit 11F). Furthermore, treatment notes from Dr. Spurling, Dr. Mitchko, and Dr. Hwang show the claimant interacting appropriately with his medical care providers and planned treatment (Exhibits 2F; 3F; 13F). Their treatment notes are not consistent with the claimant having marked and extreme limitations (Id.).

---

[15] See, Tr. 23 ("The claimant had counseling from June of 2019 through and continuing to after the date last insured with Hilda Kay Loree-Pryor, LCSW-R (Exhibit 11F).").

Tr. 26.

Again, though, despite describing the "treatment notes" from prior to the last-insured date as a whole as being inconsistent with Loree-Pryor's opinion, the ALJ does not mention Loree-Pryor's own treatment notes from prior to the last insured date, which, in addition to being far more detailed than Rose's medication management notes in Exhibit 11F, appear consistent with at least some of the opinions in Loree-Pryor's 2022 functional assessment. *See, e.g.* Tr. 568 (Treatment note from August 22, 2019: "Diagnosis Obsessive-Compulsive Disorder, Major Depressive Disorder, Recurrent episode, moderate, Unspecified Anxiety Disorder[.] Cognitive functioning: Preoccupied. Mood: Anxious. Functional status: Impaired. . . .   Continued obsessions of swallowing his tongue interfere with his ability to focus on much else most of the day.   Pt reports having anxiety with trips he went on over the last 2 weeks.   Pt was successful without using a sleep mask to cover his eyes during the trip to feel safe."); Tr. 570 (Treatment note from September 5, 2019: "OCD symptoms, preoccupation with ruminating negative thoughts are patient's baseline.   Patient feels he is #9 on a scale of anxiousness he experiences on daily basis."); Tr. 576 (Treatment note from October 16, 2019: "Patient is having difficulty coping with his inability to follow through with tasks that will assist him in reconstructing his distorted cognition and reducing his panic with leaving the house. Patient is still having difficulty taking the dog out to the fenced in area to train him."); Tr. 578 (Treatment note from October 30, 2019: "Patient has irrational fears of the field he needs to train the dog in.   Patient has OCD symptoms of fearing he will swallow his

24

tongue while outside and no one will be able to help him."); Tr. 589 (Treatment note from January 30, 2020: "Spouse to assist patient with reality checks for irrational thinking that exacerbates his mental health symptoms of PTSD, OCD, and Agoraphobia."); Tr. 594 (Treatment note from March 11, 2020: "Patient's agoraphobia is still exacerbated, reporting he feels like a failure since he is unable to go outside."); Tr. 610 (Treatment note from July 8, 2020: "Patient presents as preoccupied, flat affect, depressed mood, reported feeling shameful over not being able to participate in his daughter's graduation activity due to his agoraphobia and panic.").   The ALJ's assertion that the "treatment notes" from the relevant period were inconsistent with Loree-Pryor's opinion suggests that he may have overlooked Loree-Pryor's treatment notes from before the last-insured date.

In sum, the Court finds that remand is required for the ALJ to evaluate the medical opinion evidence as required by 20 C.F.R. § 416.920c.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is granted, Defendant's cross-motion (ECF No. 10) for the same relief is denied, and this action is remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).   The Clerk is directed to enter judgment for Plaintiff and to close this action.

So Ordered.

Dated: Rochester, New York
        March 21, 2025                    ENTER:

                                          _Charles J. Siragusa_
                                          CHARLES J. SIRAGUSA
                                          United States District Judge